# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NETTIE J. ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-08-1117-F |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Nettie J. Robinson, seeks judicial review of a denial of disability insurance benefits (DIB) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.   Procedural Background

Ms. Robinson filed her application for DIB on December 23, 2004, alleging an inability to work since August 1, 2001. Ms. Robinson's application was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #7] (AR) at 14-23. The Appeals Council denied Ms. Robinson's request for review. AR 6-9. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520. She first determined that Ms. Robinson had not engaged in substantial gainful activity at any time relevant to her decision. AR 19. At step two, the ALJ determined that Ms. Robinson has severe impairments including sarcoidosis, a "neck condition" and a "back condition." AR 19. At step three, the ALJ found that Ms. Baker's impairment does not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19. The ALJ next considered Ms. Robinson's residual functional capacity (RFC). She determined that Ms. Robinson has the RFC to perform sedentary work, compromised by the inability to climb, and the ability to balance, kneel, stoop, crawl, and crouch only occasionally. AR 19. At step four, the ALJ concluded that Ms. Robinson can perform her past relevant work, merchandise adjuster, as it is generally performed. AR 22.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV.   Issues Raised on Appeal

Ms. Robinson asserts three propositions of error: (1) that the ALJ erred in weighing the opinion of her treating physician, (2) that the ALJ erred in determining Ms. Robinson's RFC, and (3) that the ALJ erred in her evaluation of Ms. Robinson's pain.

## V.   Analysis

### A.   Opinion of the Treating Physician and the ALJ's RFC Findings

Ms. Robinson's medical records reflect that she has been attended by her treating physician, Dr. Kevin Riccitelli, since 2001. Dr. Riccitelli has treated Ms. Robinson for all the medical conditions recognized as severe by the ALJ. On January 3, 2005, Dr. Riccitelli wrote the following account of Ms. Robinson's impairments:

> The following is a summary of Nettie Robinson's current medical illnesses:
>
> 1. Recurrent episodes of hypoglycemia cause weakness and fatigue.
>
> 2. Chronic cervical and thoraco-lumbar pain with muscle spasms. This has been attributed to underlying scoliosis, multilevel cervical disc disease and arthritis, bilateral carpel tunnel syndrome (which recently required surgery). Prior to this surgery, she was having numbness in her face, chest, abdomen, and arm.

> 3. Migraine headaches which are triggered by the recurrent neck and back muscle spasms, for which I see her often.
>
> The chronic back and neck muscle spasms and recurrent headaches make it difficult for her to hold gainful employment.

AR 210. The ALJ stated that she found Dr. Riccitelli's assessment "to be of compromised probative value due to the absence of any reference to specific restriction on specific exertional and nonexertional work activities." AR 21.

Although the ALJ accurately summarized Dr. Riccitelli's January 3, 2005 statement, she neglected to discuss or even mention that Dr. Riccitelli had also completed a Residual Physical Functional Capacity Assessment on January 22, 2006, *see* AR 155-161, which does address specific restrictions on exertional and nonexertional work activities. According to Dr. Riccitelli, Ms. Robinson can occasionally lift and/or carry 10 pounds, can frequently lift and/or carry less than 10 pounds, can stand and/or walk at least 2 hours in an 8-hour workday and sit for a total of about 6 hours in an 8-hour workday. AR 156. Ms. Robinson's ability to push and/or pull was assessed as limited in both upper and lower extremities because of her cervical spondylosis, mild ulnar neuropathy, bilateral surgical release to address carpel tunnel syndrome, mild scoliosis of the lumbar spine, cervical spinal disc disease with osteophytes and mild thoracic spinal kyphosis. Dr. Riccitelli found that Ms. Robinson could never climb and could balance, stoop, kneel, crouch and crawl only occasionally. Dr. Riccitelli noted that arthritis in Ms. Robinson's neck would make it difficult for her to look upward. Dr. Riccitelli attributed Ms. Robinson's postural limitations to her chronic back pain. AR 157. Dr. Riccitelli stated that Ms. Robinson suffers from chronic fatigue caused

by her underlying autoimmune disease, sarcoidosis, precipitated by shortness of breath. He further noted that she often experiences pain severe enough to interfere with her attention and concentration. Further, he stated that Ms. Robinson's pain medication causes her to be drowsy. Dr. Riccitelli indicated that Ms. Robinson's impairments are likely to produce good and bad days which could lead to her being absent from work about three times a month. The actual number of workdays missed are, according to Dr. Riccitelli, difficult to predict because the actual number of workdays missed would depend on whether or not Ms. Robinson were to experience flare-ups of her sarcoidosis. AR 160. In addressing the nature and severity of Ms. Robinson's symptoms, Dr. Riccitelli stated that "[m]ost individuals with sarcoidosis can live a normally productive life style and continue work – with some limitations." AR 161.

A medical opinion from a treating source is generally entitled to more weight than the opinion of a non-treating source. *See* 20 C.F.R. §§ 404.1527(d)(2). "Medical opinions" are defined as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a).

Using a sequential analysis to evaluate the opinions of treating sources, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and

consistent with other substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If an opinion fails to satisfy either of these conditions, the ALJ must then determine what weight, if any, should be given to the opinion by considering (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301. The ALJ must set forth specific legitimate reasons for completely rejecting an opinion of a treating source. *Id*.

In this case, the ALJ failed to discuss, or even acknowledge, Dr. Riccitelli's physical RFC assessment. This document contains the treating physician's opinions with references to specific restrictions on specific exertional and nonexertional work activities. The Commissioner argues that the ALJ's RFC finding that Ms. Robinson can perform sedentary work is consistent with the "major limitations that the assessment form contained[.]" Commissioner's Brief at 5. The Commissioner further contends that the ALJ's failure to discuss or consider Dr. Riccitelli's findings of non-exertional limitations is harmless error because these limitations would not interfere with Ms. Robinson's ability to perform the duties of her past relevant work as a merchandise adjuster. This Court cannot, however, "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when

that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). Moreover, the nonexertional limitations noted in Dr. Riccitelli's opinion could affect Ms. Robinson's RFC. Therefore, the ALJ's lack of analysis of Dr. Riccitelli's opinions in determining the RFC requires reversal.

### B.   The ALJ's Credibility Assessment

Ms. Robinson contends that the ALJ erred in evaluating the effect that pain and other symptoms have on her ability to work. The ALJ found that Ms. Robinson's "medically determinable impairments could not reasonably be expected to produce the symptoms to the degree alleged, and [Ms. Robinson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible and are not supported by the evidence." AR 21.

This Court recognizes that "[c]redibility determinations are peculiarly the province of the finder of fact," *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted), and this Court "will not upset such determinations when supported by substantial evidence." *Id.*

In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set forth the framework for the proper analysis of a claimant's pain or other symptoms. First, the objective medical evidence must demonstrate a pain-producing impairment. Second, a "loose nexus" must exist between the proven impairment and the claimant's subjective allegations of pain. If these two conditions are satisfied, the ALJ must then determine whether, considering all the evidence both objective and subjective, the claimant's pain or

other symptoms are in fact disabling. *Id.* at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of credibility. *Id.* at 162, n. 2. To determine the credibility of testimony concerning pain or other symptoms, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)). A court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-679 (10th Cir. 2004) (quotation omitted).

Objective medical evidence supports the ALJ's step two finding that Ms. Robinson's severe impairments stem from sarcoidosis, a "neck condition," and a "back condition." AR 19. In 2001, Ms. Robinson complained of back pain to her treating physician, Dr. Riccitelli. AR 245. In January 2004, an MRI of Ms. Robinson's cervical spine showed disc-osteophyte complex with spinal canal stenosis and bilateral foraminal stenosis at two levels; an annular bulge at C5-6; mild kyphosis associated with an annular bulge; and partial or complete disc

dessication from C2-3 through C5-6. AR 286. An X-ray of her lumbar spine showed levoscoliosis. AR 284. Dr. John Cox diagnosed Ms. Robinson's pulmonary sarcoidosis. AR 162-175. Ms. Robinson was referred to him after an abnormal chest X-ray revealed bilateral parenchynmal infiltrates of unknown etiology. Ms. Robinson complained of chronic fatigue and shortness of breath. AR 170-172. These impairments are consistent with the chronic pain and fatigue her treating physician reported in his physical RFC assessment.

In rejecting Ms. Robinson's claim that her symptoms are disabling, the ALJ relied on the fact that Ms. Robinson traveled to New Mexico, where she spent one week in Santa Fe, and that she had also traveled to Dallas, Texas, several times. AR 21. Evidence that Ms. Robinson was sometimes able to travel is insufficient to discredit her allegations of pain and fatigue. Vacation travel often requires only sporadic activity punctuated with periods of rest. Ms. Robinson's travel is not, therefore, inconsistent with her allegations that pain and fatigue limit her capacity to do sustained work-related activities. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be penalized for attempting to lead a normal life in the face of limitations).

The ALJ also relied on a note in Ms. Robinson's medical records dated December 29, 2003. Dr. Riccitelli reported that he had recommended that Ms. Robinson go to an emergency room over the weekend when she reported that she was experiencing increased pain and paresthesia. The note further states that Ms. Robinson had not gone to the emergency room and that she was seeking a referral to a chiropractor. AR 231. The ALJ characterizes this decision as choosing "not to follow medical advice." AR 21. According

to the ALJ, Ms. Robinson's failure to seek emergency treatment was "inconsistent with the existence of a truly disabling impairment." AR 21.

It is true that a claimant's failure to follow prescribed medical treatment can suggest that her pain is less intense than alleged. *See* SSR 96-7p, 1996 WL 374186, at *7 (observing that a claimant's credibility may be undermined "if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (finding relevant to the credibility decision that "claimant's testimony appears to support a conclusion that he had not regularly taken the pain medication prescribed by his physician"). But the regulations and case law focus on the individual's failure to seek or pursue regular medical treatment, and even so, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p, 1996 WL 374186, at *7. The fact that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services," for example, is a legitimate excuse. *Id.* at *8. Ms. Robinson's one-time decision to forego emergency medical care on a weekend cannot be considered a failure to follow prescribed medical treatment. The ALJ's credibility assessment is not supported by substantial evidence in the record. It is therefore recommended that the Commissioner's decision be reversed and remanded.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by November  4th , 2009. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  15th  day of October, 2009.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE